UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
LIAM SMITH,

        Plaintiff,

-against-

**THE CITY OF NEW YORK**, **POLICE OFFICER JASON VELEZ**, in his official capacity as a New York City Police Officer and as an individual, **POLICE OFFICER BAKAR MCDUFFIE**, in his official capacity as a New York City Police Officer and as an individual, **POLICE OFFICER DONALD FROST**, in his official capacity as a New York City Police Officer and as an individual, **SERGEANT HOWARD CHU**, in his official capacity as a New York City Police Sergeant and as an individual, and **JOHN DOES 1 TO 5**, in their official capacities as New York City Police Officers/Detectives and as individuals,

        Defendants.
-------------------------------------------------------------------------x

Index No.

**COMPLAINT**

Jury Trial Demanded

## NATURE OF ACTION

1. This is a civil rights action in which Plaintiff Liam Smith seeks relief for violations of rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983; and, of rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution; and, for rights secured under the laws and constitution of the State of New York. Plaintiff seeks damages, compensatory and exemplary, an award of costs and attorneys' fees, and such other and further relief as this Court deems just and proper.

2. This civil rights action arises from the New York City Police Department's false arrest and malicious prosecution of Liam Smith.

3. On October 31, 2020, in Brooklyn, police falsely arrested Plaintiff for Trespass even though they knew that Plaintiff was lawfully present inside of leased commercial space.

4. Police falsely arrested Plaintiff for Obstructing Governmental Administration based on their started desire to search for the person who leased the commercial space, even though the police knew that the person they were looking for was not present inside of the commercial space or even inside of the building.

5. To punish Plaintiff and for no legitimate reason, police officers brought Plaintiff to a psychiatric ward where he underwent an examination that was tantamount to phycological torture.

6. The false charges against Plaintiff were dismissed by the Kings County District Attorney because Plaintiff was innocent of all charges and there was no evidence that he had committed any crime.

7. The arrest and prosecution of Plaintiff caused him great emotional distress, including depression and anxiety and to discontinue attending college in New York City.

## THE PARTIES

8. Plaintiff Liam Smith ("Smith") is a citizen of the United States and at all relevant times to this complaint, Plaintiff was a resident of Brooklyn, New York. Smith currently resides in Ohio.

9. Defendant City Of New York ("City") is a municipal corporation within the State of New York. Under § 431 of the New York City Charter, the City of New York established and maintains the New York City Police Department ("NYPD") a constituent department or agency.

10. At all relevant times, the City employed the police personnel involved in the acts underlying this lawsuit.

11. Defendants Police Officers Jason Velez, Bakar McDuffie, Donald Frost and Police Sergeant Howard Chu (collectively "NYPD Defendants"), and NYPD employees John

Does 1 to 5 were at all times relevant to this complaint, duly appointed and acting police officers employed by the NYPD.

12. At all times relevant to this complaint, the NYPD Defendants acted under the color of state law.

13. A Notice of Claim was filed within 90 days of the occurrence alleged herein.

14. On or about January 27, 2021, Plaintiff served The City of New York timely notice of the present claims pursuant to New York General Municipal Law § 50-e.

15. More than 30 days have elapsed since the Notice of Claim was served upon Defendants and Defendants have neglected or refused to make any adjustment or payment thereof.

16. This action is commenced within one year and 90 days after the cause of action arose.

## JURISDICTION AND VENUE

17. Jurisdiction is conferred by 28 U.S.C. §§ 1341 and 1343, which provides for original jurisdiction of this Court in suits authorized under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation (under color of state law, statute, ordinance, regulation, custom or usage) of any right, privilege or immunity secured by the U.S. Constitution or by any act of Congress providing for equal rights of citizens of all persons within the jurisdiction of the United States.

18. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

19. Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. § 1391, based upon where the cause of action arose.

## FACTUAL ALLEGATIONS

20. On October 31, 2021, at approximately 12:30 p.m., Smith was inside a leased commercial space inside 108 Bayard Street in Brooklyn, New York.

21. At the time, Smith was a student at Parson's School of Design and he was completing a midterm exam via video.

22. NYPD Defendants knocked on the door of the leased commercial space and asked to speak to the lessor of the commercial space.

23. Smith told the NYPD Defendants that the lessor was not present.

24. The two landlords of the commercial space told the NYPD Defendants that Smith was lawfully present inside of the leased commercial space and that Smith worked for the lessor.

25. The NYPD Defendants spoke to the lessor of the leased commercial space via cellphone and learned that he was not inside of the leased commercial space or even inside the building.

26. The NYPD Defendants unlawfully told Smith that he was required to open the door to the leased space, despite knowing that the lessor was not present and that Smith had not violated any law.

27. When the lessor arrived at 108 Bayard Street he was arrested by the NYPD Defendants.

28. Even though the NYPD Defendants knew that Smith had not committed any crime, the NYPD's Emergency Services' Unit violently broke into the leased commercial space to unlawfully and violently arrest Smith.

29. Even though the NYPD Defendants knew that Smith was lawfully present inside of the leased commercial space, he was arrested and charged with Trespassing.

30. Even though the NYPD Defendants knew that the person they were seeking, the lessor of the commercial space, was not present at 108 Bayard Street, Smith was arrested and charged with Obstructing Governmental Administration in the Second Degree.

31. Defendant Chu, who was present at 108 Bayard Street and knew all of the foregoing including that Smith had not committed a crime, approved of Smith's arrest.

32. To punish Smith, the NYPD Defendants handcuffed Smith and brought him to Woodhull Hospital for psychiatric evaluation.

33. The NYPD Defendants brought Smith to Woodhull Hospital for psychiatric evaluation despite the fact Smith did not exhibit any signs of emotional or psychiatric distress.

34. Upon information and belief, the NYPD Defendants told hospital employees that Smith was acting irrationally and had committed crimes, even though the NYPD Defendants knew that Plaintiff was not acting irrationally and that he was innocent of any crime.

35. During Smith's psychiatric evaluations he was repeatedly asked questions such as "do you know why you are here?"

36. Hospital staff deemed Smith's truthful recounting of events, including not knowing why he had been brought to the hospital, as illogical and irrational based on the NYPD Defendants' false claims regarding Smith.

37. Smith was asked the same questions in repeated psychiatric evaluations.

38. In response to the questions, Smith honestly and truthfully stated that he did not know why he was brought to the hospital for psychiatric evaluation.

39. The repeated questioning of Smith's ability to perceive reality, when he honestly and truthfully recounted the prior events, has caused Smith severe emotional distress.

40. Smith was discharged after spending approximately 20 hours in Woodhull hospital undergoing repeated psychiatric evaluations.

41. On November 1, 2020, Smith was arraigned in Kings County Criminal Court and charged with Obstructing Governmental Administration in the Second Degree, Penal Law § 190.05, and Trespass, Penal Law § 140.05.

42. A private defense attorney was retained to represent Smith during the pendency of the criminal charges.

43. On or about January 12, 2021, the charges against Smith were dismissed because he had not committed any crime.

44. As a result of Smith's false arrest, malicious prosecution and forced and unnecessary psychiatric exam, manufacturing of evidence against him and since the dismissal of the criminal prosecution, he has suffered continued emotional distress and harm to his ability to complete his higher education.

45. The unlawful conduct of the NYPD violated federal and New York laws and entitles Smith to compensatory and punitive damages under 42 U.S.C. § 1983, a federal statute authorizing a civil rights lawsuit based on such conduct.

## FIRST CAUSE OF ACTION
### (False Arrest Under State Law; All Defendants)

46. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

47. The NYPD Defendants, individually and acting in concert and/or aiding and abetting each other, intended to confine Plaintiff.

48. The NYPD Defendants did not have probable cause to arrest and/or detain Plaintiff.

49. The NYPD Defendants did not have a basis to require Plaintiff to undergo psychiatric treatment and/or psychiatric exams.

50. Plaintiff was conscious of his confinement by the NYPD Defendants.

51. Plaintiff did not consent to his confinement by the NYPD Defendants.

52. The confinement by the NYPD Defendants was not privileged

53. The confinement was made disregarding clear evidence that Plaintiff did not require psychiatric treatment and/or psychiatric exams and that Plaintiff had not committed a crime.

54. The confinement by the NYPD Defendants was intended to punish Plaintiff.

55. As a result of Defendants' actions, Plaintiff suffered damages.

## SECOND CAUSE OF ACTION
**(Malicious Prosecution Under State Law; All Defendants)**

56. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

57. By virtue of the foregoing, the NYPD Defendants, acting in concert with and aiding and abetting each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

58. Plaintiff was innocent of the criminal charges.

59. The criminal proceedings terminated in Plaintiff's favor.

60. There was no probable cause for the commencement or the continuation of the criminal proceedings.

61. The NYPD Defendants acted with actual malice.

7

62. The City is liable for NYPD Defendants' actions under the principle of *respondeat superior*.

## THIRD CAUSE OF ACTION
**(Negligent Hiring, Training and Supervision Under State Law;
Defendant City of New York)**

63. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

64. By virtue of the foregoing, Defendant City of New York is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or grossly negligent hiring, retention and supervision of its agents, servants and/or NYPD employees about their duties, including:

    (a) the standards for probable cause to effectuate an arrest;

    (b) the duty not to use false, misleading or unreliable evidence;

    (c) the continuing obligation to correct false, inaccurate, incomplete or misleading evidence and statements;

    (d) maintaining a criminal prosecution when there is evidence that in fact no crime was committed;

    (e) the duty not to require psychiatric evaluation and/or treatment when none is necessary;

    (f) the determination that a person requires psychiatric treatment and/or a psychiatric exam; and

    (g) the continuing duty to obtain, to preserve and to make timely disclosure to the appropriate parties, including the court and prosecutors, during criminal investigations and prosecutions, of all material evidence or information favorable to a person suspected, accused or convicted of criminal conduct, including exculpatory evidence as well as evidence impeaching the credibility or undercutting the reliability of prosecution witnesses and including verbal as well as recorded information.

65. Policymaking and supervisory officials for the NYPD and the City had legal and constitutional obligations to prevent their employees from violating the above duties.

66. Those policymakers and officials had knowledge and notice that adequate policies regarding hiring, retention and supervision were necessary with respect to rank-and-file police officers and their supervisors and that failing to implement such policies would result in the violation of the constitutional rights of individuals investigated and arrested by the NYPD.

67. By virtue of the foregoing, Plaintiff suffered actual damages.

68. By virtue of the foregoing, Defendant City is liable for negligent hiring, training and supervision, and the damages set forth above.

## FOURTH CAUSE OF ACTION
**(Wrongful Arrest and Detention Under The Fourth Amendment and *Manuel v. City of Joliet,* 137 S.Ct. 911 (2017); All Defendants)**

69. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

70. The NYPD Defendants, without probable cause, and in disregard of overwhelming evidence of Plaintiff's innocence, wrongfully arrested and detained him.

71. The NYPD Defendants, in absence of probable cause for Plaintiff's continued seizure, continued the seizure by submitting the false misdemeanor complaint to prosecutors and the Kings County Criminal Court, which continued the charges against Plaintiff and his detention and/or seizure, requiring Plaintiff to defend against the charges.

72. By virtue of the foregoing, Defendants are liable for Plaintiff's wrongful arrest and detention, and the damages set forth above.

**FIFTH CAUSE OF ACTION**
**(42 U.S.C. §1983; Malicious Prosecution and Deprivation of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments; All Defendants)**

73. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

74. The NYPD Defendants, by virtue of the foregoing, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

75. The criminal proceedings terminated in Plaintiff's favor.

76. There was no probable cause for the commencement or the continuation of the criminal proceedings.

77. The NYPD Defendants acted with actual malice.

78. The aforesaid conduct operated to deprive Plaintiff of his rights under the Constitution and the laws of the United States:

   (a) Not to be arrested, prosecuted, detained, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including false allegations in violation of the Fourth and Fourteenth Amendments, and the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments, to the U.S. Constitution; and

   (b) Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

79. The foregoing violations of Plaintiff's federal constitutional rights by the NYPD Defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiff's malicious prosecution without probable cause, and his other injuries and damages.

80. The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of state law, and within the scope of the NYPD Defendants' employment and authority.

81. The NYPD Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiff's constitutional rights.

82. By reason of the foregoing, the Defendants are liable for the damages set forth above.

### SIXTH CAUSE OF ACTION
**(Evidence Manufacturing; Denial of A Fair Trial Under The Fifth, Sixth, and Fourteenth Amendments; All Defendants)**

83. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

84. The NYPD Defendants acting in concert and aiding and abetting the other created false police reports and criminal complaint reports falsely claiming that they observed Plaintiff commit crimes that he was innocent of.

85. The NYPD Defendants acting in concert and aiding and abetting the other created false police reports and criminal complaint reports falsely charging Plaintiff with criminal offenses.

86. The misleading information contained in the false reports and the information omitted from them were likely to influence a jury's decision.

87. The NYPD Defendants then forwarded the false reports to prosecutors who in turn relied on them to commence formal criminal proceedings against Plaintiff.

88. As a result of the false reports of the NYPD Defendants, Plaintiff suffered a deprivation of liberty.

89. As a result of the false reports of the NYPD Defendants, Plaintiff was obligated to appear in court in connection with the false criminal charges.

90. The actions of the NYPD Defendants deprived Plaintiff of his right to not be prosecuted on fabricated evidence, and to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, and were the proximate cause of Plaintiff's injuries.

**SEVENTH CAUSE OF ACTION**
**(Failure To Intervene; 42 U.S.C. § 1983; Fourth, Fifth and Fourteenth Amendments; Sergeant Chu and John Does 1-5)**

91. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

92. Defendant Chu, who was present at the scene and had direct knowledge of the violation of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights through his wrongful arrest and detention, and malicious prosecution, exhibited deliberate indifference and/or gross negligence concerning Plaintiff's rights by failing to intervene to prevent the violation of those rights by their peers and subordinates, even though he had legal and constitutional obligations to do so.

93. Rather than intervene, Defendant Chu directly participated in, ratified, and aided and abetted, the violation of Plaintiff's constitutional rights as set forth above.

94. Defendant Chu had a realistic opportunity to intervene and prevent the harm Plaintiff suffered, a reasonable person in Defendant's position would know that Plaintiff's rights were being violated, and no Defendant took reasonable steps to intervene.

95. The Defendants, by virtue of the foregoing, are liable for the damages set forth above.

### EIGHTH CAUSE OF ACTION
**(Claim Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) against City for actions of the NYPD)**

96. Plaintiff realleges and Plaintiff repeats and realleges each and every previous allegation contained in this Complaint and incorporates them here.

97. The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to the City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

98. Prior to Plaintiff's arrest, policymaking officials at the NYPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

(a) The determination of probable cause to make an arrest;

(b) The determination that a person requires psychiatric treatment and/or a psychiatric exam;

(c) the duty not to use false, misleading or unreliable evidence; and

(d) The continuing duty of police investigators to preserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information ("so-called *Brady* material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made

13

    inconsistent statements about material facts and evidence that a prosecution witness has a motive, bias or interest affecting his credibility or has been pressured or coerced so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under *Brady*.

99.   The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the City, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

  (a)  to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

  (b)  that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

  (c)  that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

100.   Those policymakers and officials had knowledge and notice that adequate policies regarding hiring, retention and supervision were necessary with respect to rank-and-file police officers and their supervisors, and that failing to implement such policies would result in the violation of the constitutional rights of individuals investigated and arrested by the NYPD, based upon, among other things:

  (a)  credible allegations, many substantiated by judicial decisions, finding NYPD officers had wrongfully withheld material evidence or knowingly given false or misleading testimony, and lawsuits settled by the City for substantial sums based on malicious prosecution claims, (concerning which the NYPD did not investigate the alleged misconduct by the suspect

        employees) (*see* Exh. B appended and incorporated herein by reference, listing some of those decisions and settlements);

(b)    numerous decisions of the U.S. Supreme Court, the U.S. Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Division, discussing the difficult issues that regularly arise under *Brady* as well as the probable cause requirement of the Fourth Amendment;

(c)    judicial decisions directly criticizing the NYPD for failing to train and supervise officers in their *Brady* obligations and for failing to adopt adequate *Brady* disclosure policies, *see Carter v. Harrison*, 612 F. Supp. 749 (E.D.N.Y. 1985) (McLaughlin, D.J., adopting the Report and Recommendation of then Magistrate Shira A. Scheindlin), and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to provide truthful testimony and to disclose evidence that favors criminal defendants under *Brady*, *see Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), and *Carter v. Harrison, supra*;

(d)    formal reports of the New York City Comptroller's Office and the Bar Association of the City of New York criticizing the NYPD and the New York City Law Department for failing to follow up substantial civil settlements for police misconduct with disciplinary or other remedial action;

(e)    the "Mollen Report," a 1994 NYC government report on corruption in the NYPD, *see Collins v. City of New York*, 923 F. Supp.2d 462, 478 (E.D.N.Y. 2013) (Block, J.);

(f)    overwhelming media coverage concerning the problem of NYPD officers lying and the NYPD's failure to address the issue, *see Cordero v. City of New York*, 15-CV-3436, Memorandum and Order, Oct. 17, 2017, pp. 4, 22. n. 1 & 2 (E.D.N.Y.) (Weinstein, J.) (citing a plethora of newspaper articles giving the NYPD notice of the problem and holding PLAINTIFF produced sufficient evidence for a jury to conclude the NYPD's failure "to take reasonable steps to control lying by police officers is a policy of the NYPD."); and

(g)    the inherent obviousness of the need to supervise and discipline police officers in such obligations to counteract the pressure on officers and the powerful incentives they have to close cases and to obtain arrests and convictions.

101. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of Brady material.

102. The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the above-mentioned constitutional requirements.

103. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

104. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the NYPD Defendants of Plaintiff's rights under the Constitution and laws of the United States.

105. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries and causing Plaintiff to suffer the actual damages identified herein.

## DAMAGES DEMAND

WHEREFORE, PLAINTIFF demands judgment against Defendants as follows:

a. For compensatory damages of not less than $250,000;

b. For punitive damages against the individual Defendants of not less than $750,000;

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. §1988 and the inherent powers of this Court;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues raised herein

DATED: New York, New York
October 29, 2021

_____
Andrew M. Stengel, Esq.
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway, Suite 715
New York, NY 10004
(212) 634-9222

*Attorneys For Plaintiff Liam Smith*